UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ADAM SNYDER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-12622-ADB |
| HOLTEC PILGRIM, LLC, | * | |
| HOLTEC INTERNATIONAL, | * | |
| HOLTEC SECURITY INTERNATIONAL, | * | |
| LLC, and HOLTEC DECOMMISSIONING | * | |
| INTERNATIONAL, LLC, | * | |
| | * | |
| Defendants. | * | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Adam Snyder ("Plaintiff" or "Snyder") initiated this action alleging that he suffered injuries from a nuclear incident that was caused by Defendants' negligence. See [ECF No. 18]. Plaintiff amended his complaint on December 3, 2024 in an effort to comply with the pleading requirements of the Price-Anderson Nuclear Industries Indemnity Act ("PAA"). [ECF No. 29 ("Amended Complaint" or "Am. Compl").]; see also [ECF Nos. 26, 28 (discussing scope of amendments)]. Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim. [ECF No. 33]. For the reasons set forth below, Defendants' motion is **GRANTED**.

I.     BACKGROUND

"In considering a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor." Doe ex rel. Doe v. Cavanaugh, 437 F. Supp. 3d 111, 115–16 (D. Mass. 2020).

A.     Relevant Facts

From May 2021 to December 2021, Plaintiff worked for a subcontractor performing work at the Pilgrim Nuclear Power Station ("the PNPS") in Plymouth, Massachusetts, which he alleges was owned or operated by the Defendants, collectively. [Id. ¶ 12]. Specifically, Defendants purchased the PNPS in 2018 for the purpose of decommissioning it. [Id. ¶¶ 24–26].

During his final weeks at the PNPS, Plaintiff noticed that he was experiencing fatigue and intense nausea every few days, which developed into daily nausea in the weeks after leaving the job site. [Am. Compl. ¶¶ 16–17]. After learning about a Nuclear Regulatory Commission ("NRC") investigation into the PNPS, Plaintiff went to WVU Medicine Wheeling Hospital on March 5, 2023. [Id. ¶ 18]. Physicians informed him that his potential past exposure to radiation had occurred too long ago to be prescribed radiation-exposure medication, but he was eventually prescribed Ondansetron HCL for the nausea. [Id. ¶¶ 19–20]. He continues to be medicated for nausea as of the filing of the Amended Complaint. [Id. ¶ 20]

The Amended Complaint references several NRC actions taken with respect to the PNPS, including the following:

- On November 24, 2020 (six months before Plaintiff began working at the PNPS), the NRC identified one Severity Level IV violation. [Am. Compl. ¶ 34].

- On March 31, 2021 (two months prior to Plaintiff's employment), the NRC identified one Severity Level IV violation. [Id. ¶ 35].

- On October 21, 2021 (during Plaintiff's employment), the NRC initiated an investigation. Plaintiff does not allege what the results of this investigation were. [Id. ¶ 36].

- On December 17, 2021 (during Plaintiff's employment), the NRC initiated an investigation. Plaintiff does not allege what the results of this investigation were. [Id. ¶ 37].

- In April 2022 (four months after Plaintiff left the PNPS), the NRC found that Holtec had violated 10 C.F.R. § 20.1501(a)(2) "for failing to make surveys of areas that may be necessary to comply with regulations that were reasonable under the circumstances to evaluate the concentrations of radioactivity and the potential radiological hazards at the PNPS." [Id. ¶¶ 39–42].

- On June 30, 2022 (six months after Plaintiff left the PNPS), the NRC identified a Severity Level IV violation. [Id. ¶ 43].

- On September 30, 2022 (nine months after Plaintiff left the PNPS), the NRC identified a Severity Level IV violation. [Id. ¶ 44].

- On December 31, 2022 (one year after Plaintiff left the PNPS), the NRC identified a Severity Level IV violation. [Id. ¶ 45].

### B.     Procedural History

Plaintiff filed a complaint in Massachusetts Superior Court on September 9, 2024. [ECF No. 18]. Defendants removed the case to this Court on October 15, 2024, [ECF No. 1], and filed a motion to dismiss on October 25, 2024, [ECF No. 21]. Plaintiff opposed the motion on November 8, 2024 and sought leave to amend, [ECF No. 26], which the Court granted, [ECF No. 28]. He filed the Amended Complaint on December 3, 2024. [ECF No. 29]. Defendants

renewed their motion to dismiss on December 23, 2024. [ECF No. 32]. Plaintiff opposed this motion on January 2, 2025, [ECF No. 34], and Defendants filed a reply on January 17, 2025, [ECF No. 37].

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze them in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

      B.      Analysis

           1.      **Statutory Scheme**

The Price-Anderson Nuclear Industries Indemnity Act of 1957 and subsequent amendments[1] govern liability for nuclear facilities constructed in the United States before 2026. The purpose of the legislation is "to protect the public and to encourage the development of the atomic energy industry" by "limit[ing] the liability of those persons liable for . . . losses [from nuclear incidents]." 42 U.S.C. § 2012(i). This limitation includes "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation." Id. § 2014(w) (defining "public liability").[2] In turn, a "nuclear incident" is "any occurrence, including an extraordinary nuclear occurrence, within the United States, causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." Id. § 2014(q).

The statute defines a "public liability action" ("PLA") as "an action arising under [42 U.S.C. §] 2210." Section 2210 indemnifies licensed nuclear operators for nuclear incidents, as defined above. 42 U.S.C. § 2210. Therefore, PLAs are actions involving public liabilities as defined above. Id. § 2014(ii). The substantive rules of decision to be applied in a PLA are "derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with [the indemnity scheme in section 2210]." Id.

---

[1] The most significant amendment as related to this case was the Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, 102 Stat. 1066, which addressed the liability issues relevant here. See Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997).

[2] Section 2014(w) contains enumerated exceptions, but none apply to the facts alleged here.

### 2. Price-Anderson Act Claims

Because Plaintiff alleges a "nuclear incident," i.e., an "occurrence . . . causing . . . bodily injury, sickness, [or] disease . . . resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material," this case is a PLA. 42 U.S.C. § 2014(q), (ii); id. § 2210. Although a PLA is a federal cause of action, see In Re TMI Litig. Cases Consol. II, 940 F.2d 832, 856–57 (3d Cir. 1991), the Court looks to Massachusetts law because the state law of the location of the incident supplies the rules of decision for a PLA claim, 42 U.S.C. § 2014(ii).

"Under Massachusetts law, the plaintiff in a negligence suit must establish the familiar elements of a negligence claim: duty, breach, causation, and damage." Hoover v. Hyatt Hotels Corp., 99 F.4th 45, 57 (1st Cir. 2024). The parties agree that federal regulations govern the duty of care. [ECF No. 34 at 6 ("The Defendants correctly state that the occupational . . . limits set forth at 10 C.F.R. §§ 20.1201–20.1208 articulate the standard of care for public liability cases arising under the PAA.")]; see also Adkins v. Chevron Corp., 960 F. Supp. 2d 761, 769, 771 (E.D. Tenn. 2012) ("So far as this Court can tell, every circuit court of appeals to address the question raised has held that the plaintiff must prove a dose in excess of the federal permissible dose limits in order to show a breach of duty in a public liability action under the Price-Anderson Act. . . . District court decisions are just as overwhelming on the issue of whether an essential element of a public liability action is that the plaintiff's exposure exceeded the federal dose limits.").[3]

---

[3] The district court in Adkins cited the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits. See 960 F. Supp. 2d at 769–71 (collecting cases). The parties do not identify, nor has the Court's own inquiry turned up, any First Circuit case addressing this issue. Given the

Therefore, in order to state a claim under the PAA, a plaintiff must plead: (1) that Defendants had a duty to maintain radiation levels below the federal limits; (2) exposure to radiation levels greater than the dose limits prescribed in the federal regulations; (3) that such exposure proximately caused the claimed injury, and (4) that the injury is compensable. Defendants argue that Plaintiff's PAA claim fails because he has not pled exposure beyond the applicable federal limits. [ECF No. 33 at 16]. Plaintiff asserts that Defendants purposefully obscured exposure data to prevent Plaintiff from being able to properly allege his claim, which he purports is demonstrated by the NRC citations. [ECF No. 34 at 6].

The NRC has set federal permissible limits for radiation exposure. Under 10 C.F.R. Part 20, the occupational dose limit for adults is five rems per year. 10 C.F.R. § 20.1201(a)(1)(i). In light of the stated purpose of the PAA, which is to limit liability and balance the regulatory burden of nuclear facilities with the benefits of having such technology, the Court agrees with Defendants that Plaintiff must actually plead exposure above the foregoing levels.[4] See Adkins, 960 F. Supp. 2d at 769–71. Plaintiff did not do so; while he alleged that the NRC investigations "in a general sense [show] the violation of federal safety standards," he did not allege

---

parties' agreement that the federal regulations govern the duty of care, however, the Court, like the Eastern District of Tennessee in Adkins, follows the uniform approach of the many other courts nationwide who have addressed this.

[4] In his Opposition, Plaintiff asserts that "the level of exposure . . . is likely to be in excess of federal occupational limits," [ECF No. 34 at 8], but he also acknowledges "there is no way of knowing exactly and accurately what the exposure levels were, especially at the time Mr. Snyder worked there," [id. at 7]. These allegations are immaterial for the purposes of the present motion, because he does not plead such exposure. Decoulos v. Town of Aquinnah, No. 17-cv-11532, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018), aff'd, No. 18-1820, 2019 WL 11234357 (1st Cir. Dec. 10, 2019) ("[Plaintiff] cannot bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss."). Because the dismissal is without prejudice, see infra, Plaintiff may seek leave to file a second amended complaint that complies with the PAA.

specifically exposure to radiation above the permissible dose limits.  Id. at 773.  These NRC investigations do not, as Plaintiff suggests, demonstrate that he should be entitled to move forward in the absence of the requisite allegations.[5]

Moreover, even if Plaintiff were correct that showing obfuscation of the levels by Defendants could be sufficient to displace his pleading burden, the NRC reports on which he relies do not provide sufficiently compelling support to justify this course of action.  Plaintiff cites only two NRC actions that took place during his actual employment, both of which were investigations initiated by the NRC regarding which he does not plead any particular disposition.  The mere fact that the NRC initiated two investigations is not enough to create an inference that Plaintiff was exposed to radiation above permissible levels.[6]  Plaintiff makes much of the August 2022 violation determination regarding an inspection that occurred in April 2022.  [ECF No. 34-2].  But even assuming, favorably to Plaintiff, that the problematic conditions identified in the resulting NRC report were present during his employment (even though, in reality, the report stated that the problems were found on April 7, 2022 and April 26, 2022, see [ECF No. 34-2 at 2–3]), the violation found by the NRC was a Severity Level IV violation (the most minor category of violation), which the report states was "of very low safety significance."  [ECF No.

---

[5] In fact, the multiple NRC investigations and reports cited by Plaintiff, [Am. Compl. ¶¶ 34–45], underline the regulatory balance set by Congress, as they demonstrate that Congress balanced the potential reduction in safeguards from the risk of liability by establishing significant regulatory oversight.

[6] Plaintiff does not include the dispositions of these investigations in the Amended Complaint, but Defendants note that the NRC did not find a violation in either case.  [ECF No. 33 at 18 n.6 (citing NRC Office of Investigations Case Nos. 1-2022-002 & 1-2022-006, Adams accession no. ML22206A151, at 1 (Aug. 1, 2022)].  The Court may take judicial notice of this information, Manguriu v. Lynch, 794 F.3d 119, 121 (1st Cir. 2015) ("[C]ourts normally can take judicial notice of agency determinations."), but it is not dispositive to the outcome in any event.

34-2 at 2]. It is therefore clear that these incidents cannot displace Plaintiff's burden to plead actual exposure to levels above federally mandated limits.

The Court therefore **GRANTS** Defendants' motion to dismiss Count I without prejudice.

### 3. State Law Claims

Plaintiff alleges additional state common law claims, which Defendants argue are preempted by federal law.

Although the First Circuit has not had occasion to address the scope of federal preemption under the PAA, other courts have consistently found claims arising out of nuclear incidents to be preempted. See Adkins, 960 F. Supp. 2d at 767–68 (E.D. Tenn. 2012) (explaining that "every . . . federal circuit to consider the question has decided" that the PAA "completely preempts state law causes of action for public liability arising out of or resulting from nuclear incidents" (collecting cases)); Golden v. CH2M Hill Hanford Grp., Inc., 528 F.3d 681, 683 (9th Cir. 2008) ("The district court had jurisdiction under the [PAA], which preempts all state-law claims for injury resulting from nuclear incidents."); Taylor v. Interstate Nuclear Servs., Inc., No. 98-cv-01249, 1999 WL 35809694, at *2 (D.N.M. Apr. 7, 1999) (holding that "the [PAA] does preempt all state law causes of action" (emphasis added); cf. Rainer v. Union Carbide Corp., 402 F.3d 608 (6th Cir. 2005), opinion amended on reh'g (Mar. 25, 2005) (holding Bivens claims preempted). The Court has been presented no compelling reason to go against the substantial weight of federal authority, and therefore Defendants' motion to dismiss Counts II and III is **GRANTED**.

### III. CONCLUSION

Defendants' motion to dismiss with respect to Count I is **GRANTED** without prejudice. Defendants' motion to dismiss with respect to Counts II and III is **GRANTED** with prejudice.

9

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff must seek the leave of the Court to amend his complaint with respect to Count I to correct the deficiencies identified in this order. Plaintiff should attach a proposed amended complaint to any motion seeking such leave.

**SO ORDERED.**

May 9, 2025                                             */s/ Allison D. Burroughs*
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE